```
                    IN THE UNITED STATES DISTRICT COURT

                    IN AND FOR THE DISTRICT OF DELAWARE

                              - - -
UCB, INC., UCB PHARMA GMBH,
RESEARCH CORPORATION              :     CIVIL ACTION
TECHNOLOGIES, INC., and           :
HARRIS FRC CORPORATION,           :
                                  :
          Plaintiffs,             :
v                                 :
                                  :
ACCORD HEALTHCARE, INC. and       :
INTAS PHARMACEUTICALS LTD.,       :
                                  :     NO. 13-1206-LPS
          Defendants.
                              - - -

                        Wilmington, Delaware
                        Friday, October 17, 2014
                        Telephone Conference

                              - - -

BEFORE:      HONORABLE **LEONARD P. STARK**, Chief Judge

APPEARANCES:                  - - -


             MORRIS NICHOLS ARSHT & TUNNELL, LLP
             BY:  JACK B. BLUMENFELD, ESQ., and
                  PAUL SAINDON, ESQ.

                  and

             COVINGTON & BURLING
             BY:  GEORGE F. PAPPAS, ESQ.
                  (Washington, District of Columbia)

                       Counsel for Plaintiff


             SHAW KELLER, LLP
             BY:  JOHN W. SHAW, ESQ.

                  and

                                  Brian P. Gaffigan
                                  Registered Merit Reporter
```

1   APPEARANCES: (Continued)

2
                COHEN & GRESSER, LLP
3               BY:  RICHARD G. GRECO, ESQ., and
                     GURPREET (RAY) SINGH WALIA, ESQ.
4               (New York, New York)

5                    Counsel for Accord Healthcare, Inc.,
                     and Intas Pharmaceuticals, Ltd.
6

7

8

9

10                              - oOo -

11                        P R O C E E D I N G S

12              (REPORTER'S NOTE: The following telephone

13   conference was held in chambers, beginning at 12:52 p.m.)

14              THE COURT: Good afternoon, everybody. This is

15   Judge Stark. Who is there, please?

16              MR. BLUMENFELD: Good afternoon, Your Honor.

17   For the plaintiffs, it's Jack Blumenfeld and Paul Saindon

18   from Morris Nichols and George Pappas from Covington &

19   Burling.

20              THE COURT: Okay.

21              MR. SHAW: Good afternoon, Your Honor. It's

22   John Shaw for defendant Accord Healthcare; and joining me

23   from Cohen & Gresser are Richard Greco and Ray Walia.

24   Mr. Greco will be presenting the position for the court.

25              THE COURT: That's fine. I have my court

1 reporter here.  For the record, it is our case of UCB Inc.
2 et al versus Accord Healthcare Inc., Civil Action No.
3 13-1206-LPS.  We're here to discuss Accord's request.  It's
4 a motion to compel.  So we will hear from Accord and I guess
5 Mr. Greco first.  Go ahead, please.
6           MR. GRECO:  Yes.  Thank you.  Good afternoon,
7 Your Honor.  This is Richard Greco for Accord.
8           Accord brought this motion to compel an answer
9 to an interrogatory that inquires about the plaintiff's
10 contentions concerning issues that relate to anticipation
11 and obviousness.  These are issues that based on the
12 evidence the Court will inevitably have to decide in this
13 case.
14           The patent in this case have claims to a
15 compound called lacosamide, the formula of which we show
16 in our letter in racemic form.  The chemical structure of
17 the lacosamide atom consists of two stereoisomers, and the
18 Court may be familiar with stereoisomers from other matters.
19 Essentially, certain compounds like this one have two versions,
20 the same chemical structure but around a particular carbon
21 atom they have different orientations.  The analogy is often
22 made to, it's an imperfect analogy to a left hand and a
23 right hand.  They both have four fingers and a thumb but
24 they're not superimposable mirror images of each another.
25           The interrogatory which was based on a request

 1  to admit arise as a certain three pieces of evidence that we
 2  will present in this case.
 3           Our first piece of evidence was that the
 4  evidence is going to show that the racemic compound was
 5  known in the prior art.  And we cite the reference, the
 6  LeGall reference as a basis for that.  It's on pages 133
 7  and 135 where the lacosamide structure is shown.  We also
 8  have other references, the '301 patent which I mention in
 9  the footnote.
10           Now, we cite the LeGall thesis not because the
11  interrogatory in any way is asking about the LeGall thesis.
12  We cite that to show the questions that we want answered
13  concerning racemic lacosamide are not hypothetical.  They
14  are based on the evidence that the defendants will offer
15  in this case, evidence that has been identified very
16  specifically in our invalidity contentions.  We're not just
17  asking hypothetically if there was a racemic lacosamide, we
18  intend to offer the evidence indicated.
19           The second piece of evidence is that these
20  compounds, lacosamide racemic compounds was already
21  identified for use as an anticonvulsant compound.  The
22  treatise, the LeGall treatise was about anticonvulsants, and
23  on pages 154 and 155 of that one example, he discloses that
24  the close structural relationship of lacosamide, the racemic
25  lacosamide to another successful anticonvulsant compound,

plus its lipofillicity and certain electron donating compounds of the constituents, all indicate that it suggests that it would have good anticonvulsant activity.

So, once again, the suggestion for using that as an anticonvulsant that is involved in our interrogatory is not hypothetical, it's going to be part of the evidence in this case, and, once again, the traditional evidence in addition to LeGall.

THE COURT: Mr. Greco, let me stop you there. Obviously, I can see this is going to be on the merits; when we get there, an issue that I suppose will be in dispute and as you suggest we will have to resolve, but we're here today on a motion to compel responses to contention interrogatories. It seems like your contention interrogatories are a fairly indirect and arguably premature way to get whatever evidence and contention the plaintiff is going to respond to your arguments with. Tell me why it's wrong for me to see it that way.

MR. GRECO: Well, because it's very specific. One possible defense to the anticipation and obviousness argument would relate to claim 9, which is the only claim which has a requirement of purity at 90 percent R stereoisomer. The plaintiffs couldn't fairly say even though you showed the racemic is in the drug and that the R is preferred in that anticonvulsant, a person of ordinary

1 skill in the art might not be able to make that 90 percent
2 composition using ordinary skill, and sometimes in some
3 cases involving enantiomers that is the case.
4 So the request to admit was a very narrow
5 specific fact based request that is exactly the fact issue
6 that will be in dispute. Would a person of ordinary skill
7 in the art, on the date of the patent, with knowledge of
8 this compound, be able to make a composition that is
9 90 percent by weight of the R stereoisomer using routine
10 skill?
11 Now, they denied, as they have a right to do,
12 but in the interrogatory, when we inquired as to what the
13 basis of the denial is, apparently they're going to assert
14 that it is not enabled, they told us nothing. They said
15 they're relying on the state of the art; which if we had
16 said our obviousness case relies on the state of the art
17 and nothing more, I don't think anybody would say that is
18 adequate.
19 THE COURT: All right. Let me interrupt you.
20 What about the argument that what you are really seeking is
21 a legal conclusion which is inappropriate?
22 MR. GRECO: It's not a legal conclusion. It's a
23 fact issue upon which once decided legal conclusions might
24 be drawn. But whether a person of ordinary skill in the art
25 could use routine skill to make a 90 percent composition is

1  not a legal question.  That is a question of fact that
2  they may have contentions on.  I mean we contend that
3  they could because the patent itself says it was routine,
4  well-recognized methods and initially available material.
5            So we have no idea why they're going to argue,
6  as they apparently are, that this is not enabled.  We don't
7  know what references they're going to use, we don't know
8  what arguments they're going to use, and maybe I'm not
9  clever enough to think of any but I certainly can't think
10 of any.
11           When we depose the inventors in this case and
12 when we depose other people involved in this field at the
13 time and as we prepare our expert report, we need to know
14 what the positions are going to be so we could address it,
15 so we could examine it and find out if it has any basis in
16 fact.
17           But I have not asked a legal question, which is,
18 is it enabled, which is ultimately the legal conclusion.  I
19 ask their position on the fact.  And if they admit that fact,
20 then we probably have an issue.  If they deny it, well, what
21 is the basis for them saying a person of ordinary skill in the
22 art could not make this composition with routine skill based
23 on the patent.
24           THE COURT:  All right.  Thank you.  Let me hear
25 from the plaintiff, please.

1          MR. BLUMENFELD: Your Honor, it's Jack
2     Blumenfeld.
3          My understanding at least is that the purpose
4     of requests for admission is to narrow issues for trial, not
5     to ask hypothetical questions, and especially hypothetical
6     questions that go to issues of law. Because of the nature
7     of requests for admission and the consequences of admitting
8     something, they obviously have to be very precise. And,
9          When you look at these requests, they're not
10    narrow, they're not specific, they're not precise. What
11    they ask is what a person of ordinary skill in the art, who
12    is undefined, seek to use the compound as an anticonvulsant,
13    would have preferred, would have been able to create, would
14    have had a reasonable expectation of. Those are not, you
15    know, straightforward precise fact questions.
16         Whatever the LeGall thesis is and whether or not
17    what it says is hypothetical. The requests for admission
18    are hypothetical, and that is why we objected to them as
19    vague and hypothetical and call for expert opinions and then
20    we denied them.
21         On the interrogatory, we responded that the
22    hypothetical premises are wrong, that the requests are
23    unsupported, but it's hard to respond to things that provide
24    no context and that are vague. And as we pointed out in
25    our letter, in Accord's letter, and again this morning in

1   Mr. Greco's presentation, the issue has somehow morphed from
2   these what would a person of ordinary skill in the art at
3   the priority date of the patent have expected, et cetera, to
4   what does the LeGall thesis disclose and is it enabling?
5   That wasn't asked in any request for admission.
6           We're going to give them our contentions on the
7   specific LeGall thesis, we can do that, but it is 178 page
8   thesis.  It does provide context, and there is a lot more to
9   it than just here is a compound and tell us what a person of
10  ordinary skill in the art would or would not have done.  We
11  just can't, we can't deal with an interrogatory that says
12  tell us all facts relating to what a person of ordinary
13  skill would have preferred, would have been able to create,
14  would have had a reasonable expectation of if he or she knew
15  of something that apparently nobody other than the inventor
16  did know of, and that is hypothetical, and it seeks expert
17  opinions.
18          They're going to get our contentions on the
19  LeGall thesis, but I don't think there is any basis for
20  them to come in with these imprecise, broad requests for
21  admission that, as Your Honor said, are rather indirect.
22  If what they wanted to know about was the LeGall thesis,
23  this was a very funny way to ask about it.  So we don't
24  think there is any basis to require us to respond to that
25  interrogatory about these imprecise requests for admission.

1                    THE COURT:  All right.  Help me better
2    understand your further argument that this is really going
3    to a question of law and is I suppose separately improper
4    on that basis as well.
5                    MR. BLUMENFELD:  Right.  We cited Judge Farnan's
6    *Fulhorst* case, which had a different context but a somewhat
7    similar request for admission, which was admit that
8    something would not infringe if such components were used
9    in a certain structure.  He said that is an infringement
10   issue which is a hypothetical question of law.
11                   Apparently, from what I heard this morning,
12   what Mr. Greco or Accord are seeking are admissions that go
13   to whether or not -- in the letter it was enablement, this
14   morning it was obviousness and anticipation.
15                   Again, I think those do call for legal conclusions
16   on hypothetical facts which really aren't spelled out, and for
17   that reason also we shouldn't we required to respond to that
18   interrogatory any more than we have already done.
19                   THE COURT:  Okay.  Thank you.
20                   Mr. Greco, you can respond.
21                   MR. GRECO:  Yes.  I'd like to respond briefly to
22   this.
23                   First of all, we're not moving to compel any
24   answer on the request to admit.  They denied it and that's
25   end of it.  It's on the interrogatory.  The way of framing

1  the interrogatory to get at exactly the factual issue
2  was to use the request to admit as the basis. It's not
3  hypothetical here. Because it looks like what happened in
4  this case, which has already happened, is that we are going
5  to introduce evidence that the racemic compound was known
6  and we're going to introduce evidence that a person of
7  ordinary skill would readily make 90 percent R stereoisomer
8  based on the patent. It was already in the prior art.

9  If they're going to say they wouldn't be able to
10 do that, that it's not enabled, that something that the
11 inventor taught was the only way to do it, they have to tell
12 us what that is. That is a narrow issue. It's not a legal
13 question. It doesn't ask anything about the law, and it
14 certainly doesn't ask anything about the LeGall thesis. As
15 I mentioned, the reason we cited LeGall was to show when
16 we're talking about racemic lacosamide, we're talking about
17 evidence that we're going to bring as evidence in this case.

18 So the question of whether the 90 percent
19 stereoisomer composition could be made is very strongly
20 projected by these facts, and it's something they're going
21 to have to address. If they're going to say you can't do
22 it, they must have a reason for saying why that is or
23 references that show that it wasn't enabled or that it
24 couldn't do it.

25 I didn't phrase the interrogatory in terms of

1    enablement because I'm asking about the fact that a person
2    of ordinary skill could prepare this based on routine skill
3    in the art.  That is exactly the fact.
4              The case cited by my friend Mr. Blumenfeld is
5    quite a different situation.  There, claim construction
6    hadn't even been done, and the party was asking about an
7    infringement of a very complicated electronic device of some
8    kind put in a different context.
9              This question on the request to admit is
10   exactly the question that will come up in this case as a
11   fact question.  Therefore, I think it's clearly chosen fact
12   and it's something that they should have to tell us about.
13             THE COURT:  All right.  Thank you.  As this is
14   defendant's request for an order to compel the plaintiff to
15   provide something further, and, specifically, to provide a
16   further response to an interrogatory, I'm viewing this as at
17   least initially the burden being on the defendant and having
18   held the defendant to their burden, I find that they have
19   not met it, and I'm denying the relief requested by the
20   defendant.
21             Simply put, I'm not persuaded by defendant
22   that at this point in this case I should be ordering the
23   plaintiff to do anything further in response to these
24   particular interrogatories.  Having looked at the RFAs,
25   the requests for admission that is and the related

1  interrogatories and the responses, I am of the view that
2  in combination, what is sought is vague, is hypothetical,
3  is not precise, and is not amenable to at least an order
4  requiring the plaintiff to provide anything further than it
5  has at this time.
6  I also am mindful of where we are in the
7  schedule in this case. I'm confident, and, in fact, it's
8  really been represented by the plaintiff that in time,
9  assuming these remain material and disputed factual
10 issues, that the defendant will have all of the information
11 regarding the plaintiff's position that the defendant needs
12 in order to fairly present its own case. So I see in that
13 regard the motion as being really somewhat premature. The
14 experts will be weighing in in due course in this case; and
15 I'm not persuaded that there is really any prejudice to the
16 defendant at this time either.
17 I'm not reaching the additional grounds for the
18 plaintiff to oppose the motion which is whether or not these
19 interrogatories should be viewed as going to legal conclusions.
20 I don't really need to reach that issue in this case. I have
21 said enough to explain why my ruling is that I'm denying the
22 request from the defendant.
23 Are there any questions about any of that,
24 Mr. Greco?
25 MR. GRECO: No, sir.

1           THE COURT:  And Mr. Blumenfeld?
2           MR. BLUMENFELD:  No, Your Honor.  Thank you.
3           THE COURT:  All right.  Thank you all very much
4    for your time.  Good-bye.
5           (Telephone conference ends at 1:10 p.m.)
6
7       I hereby certify the foregoing is a true and accurate
     transcript from my stenographic notes in the proceeding.
8
9                              /s/ Brian P. Gaffigan
                               Official Court Reporter
10                              U.S. District Court